## EX PARTE STROUD.

### Opinion delivered January 26, 1925.

CONTEMPT—SUBPOENAING UNNECESSARY NUMBER OF WITNESSES.—
Where petitioner, charged with the commission of certain
felonies, subpoenaed 167 witnesses, many of whom could give
no material testimony in the cases, a fine for contempt was not
authorized, as there was no violation of any court order.

Certiorari to Franklin Circuit Court, Ozark District;
*James Cochran,* Judge; reversed and judgment quashed.

*Benson & Benson* and *Hays, Priddy & Hays,* for
appellant.

*H. W. Applegate,* Attorney General, and *John L.
Carter,* Assistant, for appellee.

SMITH, J. At the September, 1924 term of the
Franklin Circuit Court for the Ozark District there was
pending against petitioner, Walter Stroud, three indict-
ments, one charging him as an accessory before the
fact to the crime of arson, another with the crime of
forgery, and the third with the crime of embezzlement,
committed while petitioner was assistant cashier of
the Bank of Ratcliff. There was also pending at the
same time, in the same court, five indictments against
W. D. Stroud, a brother of petitioner, and there were
three indictments against another brother, making
eleven indictments in all, and each was for a felony
charge. These cases were all set for trial on Monday,
September 8, and no order of court had been made indi-
cating which case would be first called for trial, or in
what order the cases would be tried. Just prior to the
September term of court petitioner, for himself and his
two brothers, wrote a letter to the clerk of the circuit
court, inclosing a list of witnesses for whom he wished
subpoenas to be issue.

On September 8 W. D. Stroud was placed on trial on
the charge of being an accessory before the fact to the
crime of arson, and, at the conclusion of the trial, on
Wednesday of that week, he was convicted. On Thurs-
day a brother was placed on trial on the same charge,

and, at the conclusion of his trial, on Saturday of the same week, he too was convicted.

Two weeks later, and during the same term of court, petitioner was cited and fined for contempt. Upon the hearing of this charge the court made the following finding of fact, after having heard the testimony offered: Petitioner had caused 167 witnesses to be subpoenaed and had caused his brother to be subpoenaed in each other's cases. A large number of these witnesses were never sworn nor put under the rule, and were not called as witnesses. Upon petitioner's examination he testified that a large number of witnesses had been subpoenaed to testify as character witnesses, but it appeared from his examination that many of these witnesses could have given no relevant or material testimony on that issue, and that there were still other witnesses for whom petitioner was unable to give any reason for having subpoenas issued. Upon this finding the court adjudged petitioner guilty of contempt, and assessed a fine against him in the sum of $250, and the record upon which this was done has been brought before us by certiorari for review.

In Rapalje on Contempts, § 21, civil and criminal contempts are defined and distinguished in the following language: "Civil contempts are those *quasi* contempts which consist in failing to do something which the contemnor is ordered by the court to do for the benefit or advantage of another party to the proceeding before the court; while criminal contempts are all those acts in disrespect of the court or of its process, or which obstruct the administration of justice, or tend to bring the court into disrepute, such as disorderly conduct, insulting behavior in the presence or immediate vicinity of the court, or acts of violence which interrupt its proceedings; also disobedience or resistance of the process of the court, interference with property in the custody of the law, misconduct of officers of the court," etc.

Assuming that the testimony heard by the court
sustains the finding of fact made, we are of the opinion
that the court erred in adjudging petitioner to be in con-
tempt of court. Certainly his conduct does not come
within the definition above quoted. There was no defiance
of any order of court. The parties were endeavoring to
prepare for trial, and they were tried at the time and in
the order in which the State elected to proceed.

It may have been that an unnecessary number of
witnesses were subpoenaed, but the case does not even
present the question of a violation of any rule on that
subject (*Aikin* v. *State,* 58 Ark. 544), and we need not
consider what action, if any, the court might have taken
to prevent the abuse of the right to have process for wit-
nesses. But, if it be conceded that there was an abuse of
the right of an accused person to have compulsory pro-
cess to procure the attendance of witnesses in his behalf,
this would not constitute contempt of court.

In *Johnson* v. *State,* 87 Ark. 45, the trial court found
that the plaintiff's attorney had filed a number of
vexatious motions in the cause, which had been over-
ruled, and thereafter another motion was filed which
the court regarded as frivolous, its purport being that
the court was related within the prohibited degree of
consanguinity to one of the attorneys for a cross-com-
plainant in the case, and that said attorney had a con-
tingent interest in any recovery which might be had,
and that the judge of the court was therefore, disquali-
fied. Upon filing this motion plaintiff's attorney, after
citations, was fined for contempt. The proceedings was
brought before this court for review on certiorari, where
the judgment of the court below was set aside and
quashed; and, in the opinion in that case, this court said:
"There is a recital, however, that petitioner had pre-
viously filed in the case and argued before the court
other vexatious motions. When these motions were filed
the judgment does not recite, nor does it declare, that
petitioner had been guilty of contempt in filing any of
them. The mere filing and presentation of a motion

or repeated motions which are thought to be for the purpose of vexation or delay, do not constitute contempt of court. The court may, in the exercise of its inherent powers, strike them from the files because they are not presented to subserve the ends of justice, and are merely for vaxation or delay, but, unless they are presented in a contemptuous or disrespectful manner, or unless they contain matter which of itself constitutes contempt, the court cannot treat them as contemptuous merely because they are thought to be for vexation or delay. Take, for instance, motions for continuance or change of venue. The court may well treat repeated motions of this kind as dilatory in their purpose, and refuse to hear them; but, if they are presented in a respectful manner, it shows no contempt of court, and cannot be so treated, unless they involve some violation of the court's order, so as to amount to an obstruction of the administration of justice.''

This case is reported in 18 L. R. A. (N. S.) 619, and in 15 Ann. Cas. 531. In the annotator's note in 18 L. R. A. (N. S.) it is said that a careful search of the authorities had failed to disclose any other decision on the question of contempt in filing repeated motions which were not presented in a contemptuous or disrespectful manner and contained nothing which, of itself, constituted contempt. But we think the principle announced in the Johnson case, *supra,* is conclusive here, and that the court's action in fining petitioner for contempt was unauthorized by law, and that judgment is therefore set aside and quashed.